Filed 6/9/25  P. v. Sweat CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051244 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC247074) |
| v. | |
| TODD SWEAT, | |
| Defendant and Appellant. | |

Defendant Todd Sweat was sentenced to 26 years in prison for a robbery committed in 2002.  He was then resentenced in 2023 to 25 years in prison under Penal Code section 1172.75.  The resentencing court struck a now-invalid one-year prior prison term enhancement but reimposed the upper term of five years for second degree robbery, as well as 10-year gang and firearm enhancements.  Defendant appeals that resentencing, arguing the court should have further reduced his sentence.  We will reverse the judgment and remand for resentencing.

## I.  BACKGROUND

### A.  THE ROBBERY

Our summary of the underlying facts is based on this court's opinion in case No. H027550 and the record in that case, of which we have taken judicial notice at both parties' request.

A Holiday Inn employee was working on the morning of January 18, 2002, and left the front desk counter for a moment around 5:30 a.m.  Two men were at the counter

when he returned, one on either side of it. The man behind the counter was armed with a handgun and the other man also appeared to be holding a gun. The man behind the counter pointed the gun at the hotel employee, threatened him, and directed him to lie flat on the floor. The employee "did what he asked." He heard the other man come over the counter and the two men talk about where the security camera and money were located. He also heard things being moved and three people going through cabinets, closet areas, and the cash drawer.

The employee was told that he had 10 minutes to disable the security camera or he would be dead. He told the men where the security system was, but said he did not know how to disable it. The men asked the employee where his things were, and he said they were in the back. One man told him to get them, but when he tried to get up, another man told him to stay on the floor. One of the men brought the employee's backpack to him and dumped the contents on the floor in front of him. The men went through the contents of the backpack and took a cell phone, a pager, two credit cards, the employee's driver's license, and a small amount of cash. When they saw handcuffs, the men asked the employee if he was a policeman. He responded that he worked store security. The men handcuffed the employee's hands behind his back and told him "not to get up and that there was someone outside that was waiting to see if [he] called the police."

The employee saw the men leave the back office and close the door behind them. A few minutes later he heard a hotel guest out in the lobby ask for assistance. He got up, saw that the area was clear, and called for the only other person on duty to come to the front desk. The employee estimated that between $500 and $700 had been taken from the hotel cash registers.

A police investigation identified defendant as one of the men who had participated in the robbery. Defendant was seen driving a car in which another man, Lorenzo Fosselman, was a passenger. After defendant and Fosselman fled, police searched the car and found the Holiday Inn employee's driver's license on the front passenger seat. Police

also found a rental agreement for the car in the name of Paul Dawson, which included an addendum adding defendant as a driver.

## B. GANG EVIDENCE

A detective testified at defendant's trial as an expert on African-American criminal street gangs. She testified that the 408 Mob gang was an ongoing criminal street gang whose primary activities are robbery, assault with a deadly weapon, possession of drugs for sale, and vehicle theft. She noted that members and associates of 408 Mob wear blue clothing. As of January 2002, the gang had approximately 20 validated members. Fosselman and Dawson were members of the gang who had prior gang convictions. Defendant was also an admitted member of 408 Mob.

One of defendant's codefendants was a founder of the Swamp Boys gang in San Jose, which later became known as El Rancho Verde. El Rancho Verde was another ongoing criminal street gang affiliated with the Crips, and its members also identified with the color blue. Defendant's other codefendant was a member of 4400 Block, a subset of the North Side Gangster Crips, an ongoing criminal street gang in Stockton. The detective testified that, in her opinion, the robbery at the Holiday Inn was committed in association with and for the benefit of a criminal street gang.

## C. VERDICT AND ORIGINAL SENTENCING

The jury found defendant guilty of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c); count 1; unspecified statutory references are to the Penal Code) and false imprisonment (§§ 236, 237; count 2), and found true the allegations that he committed the offenses for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)). The jury also found true firearm allegations attached to counts 1 and 2 (§§ 12022.53, subd. (b), 12022.5, subd. (a)), and found defendant guilty of possessing a firearm as a felon (former § 12021, subd. (a)(1); count 3). Following a court trial on the issue, the court found true the allegation that defendant had served a prior prison term.

3

The trial court sentenced defendant to 26 years in prison on count 1, consisting of the upper term of five years for second degree robbery; a 10-year firearm enhancement; a 10-year gang enhancement; and a one-year prison prior enhancement. The court imposed a concurrent sentence of 23 years on count 2, consisting of the upper term of three years for false imprisonment; a 10-year firearm enhancement; and a 10-year gang enhancement. On count 3, the court imposed a concurrent upper-term sentence of three years.

### D. RESENTENCING PROCEEDINGS

Defendant's sentence was recalled under section 1172.75 in 2023 because it included a now-invalid one-year enhancement which was based on a prior prison term served for a non-sexually violent offense. Represented by counsel, defendant asked the court to strike the invalid one-year enhancement under section 1172.75; exercise its discretion to dismiss or reduce the other enhancements under section 1385; vacate the gang enhancement under amended section 186.22; revisit its imposition of an upper term under amended section 1170; and redesignate count 2 as the lead offense under amended section 654. The prosecution agreed the prior prison term enhancement should be stricken but opposed any further changes to defendant's sentence.

Numerous people spoke in support of defendant at the resentencing hearing. The prosecutor acknowledged defendant's apparent support from his family and community members, which had also been evident at the time he was initially sentenced. But citing defendant's prior domestic violence conviction (for which he was on parole when he committed the robbery) and his involvement in numerous violent incidents while incarcerated, the prosecutor argued defendant should be resentenced to 25 years because he posed a danger to public safety. The prison incidents included an attack on a fellow inmate in 2007; an attack on a correctional officer in 2008; participating in a "race riot" in 2010; an attack on an inmate in 2013; a "coordinated attack" in 2015 which led to the discovery of 23 weapons across multiple prison yards; possessing a sharpened metal nail

4

in 2016; participating in a "riot" in 2018 during which defendant attacked another inmate and injured his own knuckles; and an assault on another inmate in 2020. Defendant explained those incidents in an interview with a defense investigator, and a report summarizing the interview was provided to the court.

The trial court struck the one-year prior prison term enhancement and resentenced defendant to 25 years in prison on count 1, explaining that it found the sentence appropriate given defendant's history of violence. The court noted that section 1172.75 permits consideration of postconviction factors (§ 1172.75, subd. (d)(3)) and that defendant had originally been sentenced to an upper term (§ 1172.75, subd. (d)(4)). In reimposing an upper term, the court stated it was "the appropriate sentence and the only one that's in the interests of justice in this case" despite the presence of mitigating factors. The court acknowledged it now has discretion (under amended section 654) to designate count 2 as the lead offense, but stated that count 1 was "the most serious charge" and thus "the appropriate charge given all the facts and circumstances here."

With respect to the firearm enhancements, the court noted a 2019 parole risk assessment report in which defendant admitted carrying a loaded gun during the robbery in case he had to use it. (The report concluded that defendant presented a high risk for violence.) The court "considered and afforded great weight to the evidence offered by [] defendant of the mitigating circumstances," but declined to exercise its discretion to strike or dismiss the enhancements on count 1. It found both that "dismissal of the enhancement would endanger public safety" and that it was "not in the furtherance of justice to dismiss the enhancements or strike their punishment." The court acknowledged defendant's submission of evidence that while incarcerated he had been diagnosed with posttraumatic stress disorder, but found the disorder had not "substantially contributed to his involvement in the commission of these offenses."

On count 2, the court reimposed the three-year upper term for false imprisonment and the 10-year firearm enhancement for a total concurrent sentence of 13 years. It

5

struck punishment for the gang finding on count 2 in accordance with a 2017 habeas order, and it reimposed a three-year concurrent upper term on count 3.

## II.    DISCUSSION

Defendant challenges reimposition of the upper term on all three counts, as well as the sentencing enhancements on counts 1 and 2. We will remand for resentencing so defendant may receive the benefit of ameliorative legislation relating to the upper terms and the gang enhancement and findings.

### A. RESENTENCING UNDER SECTION 1172.75

Defendant's original 26-year sentence included a one-year prior prison term enhancement under section 667.5. That statute, which previously contemplated a one-year sentencing enhancement for any prior prison sentence served within a prescribed period, now limits the enhancement to prior prison terms served for sexually violent offenses. (§ 667.5, subd. (b); Stats. 2019, ch. 590, § 1.) "Any sentence enhancement that was imposed" under former section 667.5, subdivision (b), except for those enhancements imposed for sexually violent offenses, is now "legally invalid." (§ 1172.75, subd. (a).) Section 1172.75, subdivision (b) tasks the Department of Corrections and Rehabilitation with identifying "persons in their custody currently serving a term for a judgment that includes an enhancement described in subdivision (a)" and providing that information to the appropriate trial court. That court is then tasked with verifying that a defendant's current judgment "includes a sentencing enhancement described in subdivision (a)" and, if so, resentencing the defendant. (§ 1172.75, subd. (c).)

Resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety." (§ 1172.75, subd. (d)(1).) Significant to this appeal, the resentencing court must also "apply any other changes in law that reduce sentences or provide for judicial discretion so

6

as to eliminate disparity of sentences and to promote uniformity of sentencing."
(§ 1172.75, subd. (d)(2).)  As the trial court correctly noted, postconviction conduct may
be considered in resentencing.  (§ 1172.75, subd. (d)(3).)

### B.  DEFENDANT IS ENTITLED TO THE BENEFIT OF SENATE BILL NO. 567

In his opening brief, defendant argues the mandatory language of section 1172.75,
subdivision (d)(2) required the trial court to apply Senate Bill No. 567 (2021–2022 Reg.
Sess.) and prohibited resentencing to an upper term.  Senate Bill No. 567 amended Penal
Code section 1170 to allow an upper term to be imposed only if aggravating factors
supporting it are admitted by the defendant or found true by a jury.  (Stats. 2021, ch. 731,
§ 1.3.)  As an ameliorative change, that legislation applies retroactively in nonfinal cases.
(*In re Estrada* (1965) 63 Cal.2d 740, 745–747 (*Estrada*).)  The Attorney General
contends that defendant's argument is foreclosed by section 1172.75, subdivision (d)(4),
which provides:  "Unless the court originally imposed the upper term, the court may not
impose a sentence exceeding the middle term unless there are circumstances in
aggravation that justify the imposition of a term of imprisonment exceeding the middle
term, and those facts have been stipulated to by the defendant, or have been found true
beyond a reasonable doubt at trial by the jury or by the judge in a court trial."
(§ 1172.75, subd. (d)(4).)

We invited supplemental briefing regarding the effect of the California Supreme
Court's decision in *People v. Lynch* (2024) 16 Cal.5th 730 on defendant's contention that
he should not have been resentenced to an upper term.  Specifically, we asked the parties
to address the conflict between *People v. Gonzalez* (2024) 107 Cal.App.5th 312
(*Gonzalez*) and *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455 (*Brannon-
Thompson*) concerning the proper interpretation of section 1172.75, subdivision (d)(4).
In *Brannon-Thompson*, the Third District Court of Appeal agreed with the Attorney
General's position in this case that "the Legislature intended the new burden of proof
amendments to section 1170, subdivision (b) apply only if the trial court is imposing the

7

upper term for the first time at a section 1172.75 resentencing." (*Brannon-Thompson*, at pp. 466–467.) In *Gonzalez*, a different panel of this court disagreed with the *Brannon-Thompson* court and interpreted section 1172.75, subdivision (d)(4) to "simply *restrict the scope of defendants eligible to receive the upper term* at resentencing to those who previously received the upper term, instead of creating a condition or exception independently justifying the imposition of the upper term." (*Gonzalez*, at p. 329.) The *Gonzalez* court relied on the doctrine of constitutional avoidance, interpreting the statute in order to avoid a conflict with the Sixth Amendment. (*Id.* at p. 330; see *Lynch*, at p. 768 ["a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established"].) "Under the doctrine of constitutional avoidance, a statute should not be construed to violate the Constitution if any other construction is viable." (*Gonzalez*, *supra*, 107 Cal.App.5th at p. 330, citing *People v. Garcia* (2017) 2 Cal.5th 792, 804.)

In supplemental briefing, defendant asks us to follow *Gonzalez* and the Attorney General urges us to follow *Brannon-Thompson*. We acknowledge that under essential principles of statutory interpretation we must "give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage." (*People v. Franco* (2018) 6 Cal.5th 433, 437.) We also acknowledge that a phrase such as "[u]nless the court originally imposed the upper term" would ordinarily convey an exception to the phrase which follows. But it is difficult to ascribe such an intent when considering the statute as a whole and in context. We therefore agree with defendant that *Gonzalez* provides the better approach. Significantly, *Brannon-Thompson*, decided three weeks after *Lynch*, does not address the constitutional implications of its statutory interpretation. (See *Brannon-Thompson*, *supra*, 104 Cal.App.5th at p. 467.) The Attorney General has not convinced us that there would be no Sixth Amendment conflict in interpreting the statute to dispense with proof of aggravating factors at resentencing merely because an

upper term was originally imposed—even if the upper term would be unconstitutional under current, retroactively applicable law.  Instead, we read section 1172.75, subdivision (d)(4) as limiting the circumstances under which an upper term may be imposed, and not as creating an exception to the requirements the Legislature contemporaneously embraced in amending section 1170, subdivision (b).  We follow *Gonzalez* in that interpretation to avoid a conflict with the Sixth Amendment.

Here, seven aggravating factors were identified in the probation report.  No aggravating factors other than defendant's prior prison term and his use of a weapon were found true or admitted by defendant, and those two factors independently served as the bases for sentencing enhancements.  It is not clear on this record which other aggravators the court considered in resentencing defendant to an upper term, and the record suggests the court may have reimposed the upper term at least in part based on defendant's postconviction conduct.  Under our interpretation of section 1172.75, subdivision (d)(4), remand for clarification is required, although we express no opinion about what term should be imposed in resentencing on remand.  (See *Gonzalez*, *supra*, 107 Cal.App.5th at p. 333.)

## C. THE TRIAL COURT MAY RECONSIDER WHETHER TO STRIKE THE ENHANCEMENTS

Defendant initially argued that section 1385, subdivision (c), which was added by Senate Bill No. 81 (2021–2022 Reg. Sess.), required the court to strike or dismiss one of the enhancements on count 1.[1]  Under section 1385, subdivision (c)(2), a trial court must "consider and afford great weight" to evidence of specified mitigating circumstances when determining whether to strike or dismiss a sentencing enhancement.  "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the

---

[1]  Defendant has framed his argument as applying to both counts 1 and 2, asserting that section 1385 "requires dismissal of at least one of the enhancements on each count."  We note that the court struck punishment for the gang finding as to count 2.

9

enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)  In *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*), which was decided after defendant filed his opening brief, the California Supreme Court concluded that "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*Id.* at p. 1029; see § 1385, subd. (c)(1).)

In light of *Walker*, defendant acknowledges in later briefing that the trial court's finding that dismissing enhancements would endanger public safety presents a "hurdle" to the availability of relief under section 1385.  He attempts to clear that hurdle by arguing the court abused its discretion in its finding of dangerousness.  (See *People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 [dangerousness finding is reviewed for abuse of discretion].)  In making its finding, the trial court considered defendant's "history of incarceration" and that only three years had passed since "he was beating up an inmate." The court also noted defendant was on parole when he committed the robbery; "was armed with and used a weapon at the time of the robbery;" and later "threatened a witness to illegally interfere with the judicial process."  The parole risk assessment conducted in 2019 concluded defendant represented a high risk of violence, and the court expressed agreement with that assessment.  The court also considered evidence submitted by defendant on the issue, but found it unpersuasive "especially given his history of violence within the prison."

As resentencing is required for other reasons, we need not decide whether the court abused its discretion when it determined that dismissing or striking the enhancements would endanger public safety and would not further the interests of justice. The court will have another opportunity to exercise its discretion on remand.  Regarding the scope of that discretion, we note that the dangerousness inquiry is not limited to "whether the defendant *currently* poses a danger." (*People v. Gonzalez* (2024)

10

103 Cal.App.5th 215, 228.) "Although the current dangerousness of the defendant is an appropriate factor to consider, as it will have some bearing on whether dismissing the enhancement would endanger the public, a crucial part of the inquiry is how the dismissal of the enhancement will impact the length of the defendant's sentence." (*Ibid.*) In other words, the public safety inquiry encompasses not only current dangerousness but also potential dangerousness at the time of a defendant's eventual release from custody. The July 2024 opinion we reference was issued after defendant filed his opening brief and has therefore not been addressed by the parties. We note it here simply as guidance for the trial court and not as any indication of what we believe its decision should be.

### D. DEFENDANT IS ENTITLED TO THE BENEFIT OF AMENDED SECTION 186.22

Effective January 1, 2022, Assembly Bill No. 333 (2021–2022 Reg. Sess.) amended section 186.22 to modify the elemental definitions of " 'pattern of criminal gang activity' " and " 'criminal street gang' " (§ 186.22, subds. (e), (f)), and to clarify what it means to "benefit, promote, further, or assist" a criminal street gang (§ 186.22, subd. (g)). (Stats. 2021, ch. 699, §§ 3, 4.) The statute now prescribes the permissible age of predicate offenses used to show a pattern of criminal gang activity relative to one another and to the currently charged offense; the predicate offenses must have commonly benefited a criminal street gang; the common benefit of the predicate and currently charged offenses must have been more than reputational; the currently charged offense may not be used to establish a pattern of gang activity; and the gang's members must have collectively engaged in the pattern of gang activity. (§ 186.22, subds. (e)–(g).) The substantive amendments to section 186.22 are ameliorative and thus apply retroactively in nonfinal cases. (*People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207; *Estrada*, *supra*, 63 Cal.2d at pp. 745–747.)

Defendant argues the gang evidence and instructions at his trial do not meet the new statutory standards because the prosecution's gang expert testified that the crime reputationally benefited the gang; the prosecutor argued the jury could treat the charged

11

robbery as a predicate offense; and the court instructed the jury that collective engagement in the predicate offenses was not required. The Attorney General does not appear to dispute those deficiencies, and further points out that the predicate offenses relied on at trial do not satisfy the amended statute's temporal requirements. But the Attorney General also argued the amended statute did not apply retroactively to defendant because the jury's true findings on the gang allegations were final even if his sentence was not. Although the issue of the amended statute's applicability in a resentencing context had divided appellate courts at the time of the parties' initial briefing, the California Supreme Court has since resolved the conflict by specifically deciding that "a criminal case in which the sentence is not yet final … is not final for purposes of *Estrada*, and the benefits of supervening ameliorative legislation apply retroactively" in the event of resentencing. (*People v. Lopez* (2025) 17 Cal.5th 388, 392–393.)

In supplemental briefing after *Lopez*, the Attorney General acknowledges that defendant is entitled to the benefit of Assembly Bill No. 333 and its amendments to section 186.22. We will therefore vacate the gang enhancement on count 1 and the associated true finding. We will also vacate the true finding on the gang allegation attached to count 2—although the associated punishment was struck, the finding itself remains a part of defendant's criminal record and could possibly affect him in future proceedings if left intact. (See *People v. Flores* (2021) 63 Cal.App.5th 368, 383.)

On remand, the prosecution may seek to retry the gang allegations and attempt to prove the statutory elements that did not yet exist at the time of defendant's trial. Retrial is permissible because the intervening changes to section 186.22 differentiate this case from the typical one in which a finding is reversed due to insufficient evidence. (*People v. E.H.* (2022) 75 Cal.App.5th 467, 480; *People v. Figueroa* (1993) 20 Cal.App.4th 65, 71–72.) Defendant urges us to prohibit retrial because relitigating decades-old jury findings would be both burdensome and complex, and "to delay final adjudication of the

12

enhancement finding would be unfair" given that defendant has already served the majority of his sentence. The essence of defendant's position is that continued prosecution of the gang allegations would not serve the interests of justice, a determination best left to the discretion of the trial court in the first instance. (See § 1385, subd. (c)(3).)

### E. DEFENDANT'S REMAINING ARGUMENTS

As an alternative to reversal of the gang findings under Assembly Bill No. 333, defendant requests in his opening brief that we strike either the firearm enhancement on count 2 or the 10-year aggravated term originally imposed for the gang enhancement on the same count. The Attorney General correctly responds that the issue is moot because the resentencing court struck punishment for the gang finding on count 2. And in any event, we would have no occasion to consider the issue given our conclusion that the gang findings must be vacated and the matter remanded for resentencing. Nor do we have occasion to consider defendant's assertions that the court's failure to apply mandatory provisions of sections 1172.75 and 1385 deprived him of due process.

Defendant also contends the court's imposition of a gang enhancement violated his federal constitutional rights because the evidence was insufficient to support the jury's finding. As we have discussed, the asserted insufficiency is the result of recent amendments to section 186.22, and evidence sufficient to satisfy the new statutory elements will be required in any retrial on the gang allegations.

### III.    DISPOSITION

The judgment is reversed, the gang enhancement and associated true findings are vacated, and the matter is remanded for resentencing. The prosecution may seek to retry defendant on the gang allegations and/or proceed by meeting the requirements of section 1170, subdivision (b)(2) regarding aggravating circumstances, or it may elect to proceed with resentencing on the current record.

13

_____

Grover, Acting P. J.

**I CONCUR IN THE JUDGMENT ONLY:**

_____

Lie, J.

**I CONCUR:**

_____

Wilson, J.

H051244
*The People v. Sweat*